IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ACKERMAN MCQUEEN, INC., MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, MELANIE MONTGOMERY, AND JESSE GREENBERG,<br>*Movants*, | § § § § § § § § | |
| v. | § § | Miscellaneous Case No. MC-20-1-HE |
| NATIONAL RIFLE ASSOCIATION OF AMERICA and WAYNE LAPIERRE,<br>*Respondents*. | § § § | |

## MOTION TO QUASH THIRD PARTY SUBPOENAS

Ackerman McQueen, Inc., Mercury Group, Inc., Henry Martin, William Winkler, Melanie Montgomery, and Jesse Greenberg (collectively, "***Movants***") file this *Motion to Quash Third-Party Subpoenas on Chickasaw Nation, INTEGRIS Health, Inc., Greater Oklahoma City Chamber of Commerce, Oklahoma Department of Tourism and Recreation, Oklahoma State University Foundation, Senior Star, Williams Energy Resources, LLC, and WPX Energy, Inc.,* (the "***Subpoenaed Parties***"), attached as **Exhibits 1-8** hereto.  Movants are Defendants in the case in which said subpoenas were issued (*National Rifle Assoc. of America, et al., v. Ackerman McQueen, Inc., et al.*, Case No. 3:19-CV-02074-G, Northern District of Texas, Dallas Division), and make this motion in the present venue pursuant to Fed.R.Civ.P. 45 (d).  In support hereof, Movants respectfully show the court as follows:

### I.    SUMMARY

This instant action arises out of a multi-district dispute between the National Rifle Association ("***Respondent***" or "***NRA***") and its longtime public-relations firm, Ackerman McQueen ("***AMc***").  As part of its scatter-shot discovery strategy, the NRA has served numerous

third-party subpoenas to current and former clients of AMc around the country, including the Subpoenaed Parties, herein. The third-party subpoenas at issue in this Motion are harassing and seek information wholly irrelevant to the claims and defenses in the lawsuit. Stated differently, the NRA and its counsel have served these subpoenas for the sole purpose to harass AMc's current and former clients, and disrupt their business relationships. Because the Western District of Oklahoma is the court of compliance for these subpoenas, Movants respectfully request this Court quash the subpoenas and prohibit the NRA and its counsel from pursuing these abusive and harassing discovery tactics.

## II.   BACKGROUND

**A.   <u>Litigation History</u>**

1. On August 30, 2019, the NRA sued AMc, Mercury Group, Martin, and Greenberg in Texas federal court,[1] while maintaining three additional cases against AMc in Virginia for the same claims.[2] After Movants filed a motion to dismiss, the NRA filed its First Amended Complaint on October 25, 2019 (Doc. 18), adding new individual defendants (current and former AMc employees). Movants then filed a new motion to dismiss (Doc. 28) on November 15, 2019. That motion is currently pending. Movants also filed their Amended Answer, Amended Counterclaim, and Third-Party Complaint (Doc. 31) on November 15, 2019.

2. The NRA's First Amended Complaint asserts the following causes of action:

   a. Claims for false association under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) (*see* Doc. 18 at 40);

   b. Copyright infringement under 17 U.S.C. § 101 *et seq.* (*see* Doc. 18 at 42);

   c. Conversion (*see* Doc. 18 at 43);

---

[1] *NRA v. Ackerman McQueen, Inc., et al*, Case No. 3:19-cv-02074-G, in the United States District Court for the Northern District of Texas, Dallas Division.
[2] The NRA also amended its complaint in Virginia on February 6, 2020 to allege additional claims it already brought in the Texas action back in October 2019.

      d.      Fraud (*see* Doc. 18 at 45);

      e.      Breaches of fiduciary duties (*see* Doc. 18 at 52);

      f.      Conspiracy (*see* Doc. 18 at 55);

      g.      Breach of fiduciary duty of loyalty (*see* Doc. 18 at 56); and

      h.      Breach of contract (*see* Doc. 18 at 58).

3. In response, AMc asserted a counterclaim and third-party complaint for:

      a.      Libel per se (the NRA falsely accuses AMc of extortion) (see Doc. 31 at 111);

      b.      Tortious interference with contract (regarding AMc employment agreements) (see Doc. 31 at 112);

      c.      Declaratory judgment (the NRA waived the confidentiality provision of the Services Agreement between the NRA and Ackerman McQueen) (see Doc. 31 at 112);

      d.      Fraud (relating to NRATV and compensation of talent hired to promote the NRA) (see Doc. 31 at 113); and

      e.      Breach of contract (regarding the NRA's failure to pay AMc's invoices, failure to indemnify and reimburse AMc for expenses arising from government inquiries, failure to obtain a $3 million letter of credit securing AMc's invoices, and failure to pay a termination fee upon termination of the Services Agreement) (see Doc. 31 at 113-122).

**B.**    **The NRA's Abusive Discovery Tactics**

4. To further understand the extent of the artifice and harassment by this subpoena, it is necessary to consider the litigation history and discovery status: the NRA sued AMc in Virginia in April 2019 for alleged failure to comply with audit requests and not turning over certain information, including a contract with Lt. Col. Oliver North ("***Col. North***").

5. The NRA sued AMc again in Virginia in May 2019 for breach of fiduciary duty and breach of the Services Agreement against (confidentiality), relating to allegations of "leaks" and a false extortion narrative. The NRA then sued AMc in Texas federal court in September 2019

for intellectual property claims, breach of contract *yet again* (for failure to comply with audit request and to turn over certain information, including the Col. North contract), and fraud.

6. And the NRA filed a fourth lawsuit against AMc for a third time in Virginia in September 2019 for return of property, which AMc has not opposed but also for which the NRA must first pay AMc to cover the expense of the return. The NRA has incorporated in the Texas action the claims in the three Virginia lawsuits. Those three Virginia cases have been consolidated into one.

7. To date, the NRA has propounded more than 400 discovery requests in the Texas lawsuit alone. Those discovery requests replicate the discovery in the Virginia lawsuits. Then, on January 29, 2020, the NRA served an *additional* 140 document requests in the Virginia lawsuit, which requests are almost identical to the ones already issued in Texas. And just on February 3, 2020, the NRA served *the exact same* requests in the Texas case (an additional 108). The NRA did not even bother to change the requests to refer to the correct request numbers (*e.g.*, Virginia Request No. 61 refers to Request No. 60, and Texas Request No. 89 refer to Request No. 60 when it should refer to Request No. 88). In total, the NRA has served upon Movants more than 600 discovery requests.

8. More abusively, the NRA issued more than 20 subpoenas to various third parties, including AMc's current and former clients (ten on January 8, 2020 and eleven on January 24, 2020). One subpoena even asks a vendor for AMc's *access credentials* so that the NRA can gain access to AMc's account.

9. The NRA served its Subpoena for Production of Documents on the Subpoenaed Parties on January 24, 2020 (the "***Subpoenas***").[3] Notably, none of the parties' claims or

---

[3] The NRA also served document subpoenas on three additional third-parties located in other states on the same day, including subpoenas to Six Flags Entertainment Corporation, Remington Firearms, and the American Clean Skies

counterclaims directly reference or relate to any of the Subpoenaed Parties. Each of the Subpoenas contain enumerated requests for different broad categories of documents and information related to "Digital Media" services performed by AMc. *See* Exhibits 1-8.

10. The connection between the Subpoenaed Parties and Respondent's Amended Complaint is feeble at best. The only possible reference to the Subpoenaed Parties, or any "Digital Media" services provided to them by AMc, occurs in the fifth unnumbered paragraph of Respondent's Preliminary Statement, in which the NRA makes an inventive but factually unsupported allegation about AMc's business relationships: "*Many of these campaigns* [referring to AMc's other clients besides the NRA], *which cost clients tens of millions of dollars, were shut down because of their ineffectiveness, costliness, and Defendant's reluctance to provide specific performance data in accordance with its obligations*." *See* Doc. 18 at 4. Presumably, this allegation was made in support of the NRA's claim for fraud in relation to AMc's billing practices and its development and production of the NRA's own "digital media" platform, NRATV.

11. Apparently having no factual support for this damaging—and very public— allegation, the NRA has embarked on a blitzkrieg-scale effort to harass and intrude upon the business operations of AMc's current and former clients. The NRA seeks information from each of the Subpoenaed Parties related to the AMc's billing practices and provision of digital media services without limitation as to time period.

12. However, even if the Subpoenaed Parties were to comply with these invasive requests, any resulting document production would yield no relevant documents to support the NRA's allegations. As explained herein, many of the Subpoenaed Parties either had no digital media presence whatsoever, or were clients so long ago that the technologies and production

---

Foundation. Movants have filed additional motions to quash in the Eastern District of Virginia and the Western District of Texas.

methods used for these clients simply bear no relationship to those used for the NRA. Even for current clients with digital platforms, the size and scope of the NRA and its platform, NRATV, were so much broader and more complex that any comparison with AMc's other clients would not lead to the discovery of any admissible evidence. Most importantly, these Subpoenas seek documents that date back the entire length of the business relationship, decades in some cases. These subpoenas are nothing but a fishing expedition to retroactively justify a previous bad-faith allegation with no basis in law or fact.

### III. ARGUMENTS & AUTHORITIES

13. Under Federal Rule of Civil Procedure 45, a Court must quash or modify a subpoena that subjects a person to undue burden. FED. R. CIV. P. 45(d)(3)(A)(iv). The Court may also quash or modify a subpoena that requires disclosure of a trade secret or other confidential research, development, or commercial information. FED. R. CIV. P. 45(d)(3)(B).

14. Moreover, subpoenas to a non-party do not grant the requesting party any broader right to information than allowed by the Federal Rules of Civil Procedure for discovery between the parties. Rather, "considerations of both relevance and proportionality govern the subpoenas." *Ward v. Liberty Ins. Corp.*, No. CIV-15-1390-D, 2018 U.S. Dist. LEXIS 26710, at *3 (W.D. Okla. Feb. 20, 2018) (quashing the subpoena as unduly burdensome when it required the subpoenaed party to "turn over apparently every document related to its policies and procedures … regardless of the documents' relevance to Plaintiff's claims in this suit"). Accordingly, a subpoena must be relevant to a party's claim or defense and be proportional to the needs of the case. *See* FED. R. CIV. P. 26(1). Thus, under Oklahoma federal law, a lawyer has a "duty to take reasonable steps to avoid imposing undue burden or expense upon the party subject to the subpoena." *Huntair, Inc. v. ClimateCraft, Inc.*, 254 F.R.D. 677, 679 (N.D. Okla. 2008).

15.     Rule 45 requires the Court to quash or modify a subpoena that (i) fails to allow a reasonable time to comply; (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden. FED. R. CIV. P. 45(d)(3)(A). The Court may also quash or modify a subpoena that requires disclosure of a trade secret or other confidential research, development, or commercial information. FED. R. CIV. P. 45(d)(3)(B).

16.     Further, "good faith in issuing a subpoena is not sufficient to avoid sanctions under Rule 45(c)(1) if a party has issued the subpoena in violation of the duty imposed by that rule," *i.e.*, by imposing an undue burden on the third party. *Huntair,* 254 F.R.D. at 679.

**A.      The subpoenas are overbroad and seek irrelevant, confidential information.**

17.     The Subpoenas issued to the Subpoenaed Parties on January 24, 2020 command production of documents by 10:00 a.m., February 10, 2020.

18.     The subpoena seeks various "documents and records" and defines the terms "document" and "record" to "mean all writings of any sort" and states that "each term should be construed in its broadest sense." The definition further includes, without limitation, a description of every imaginable type of document and any electronically recorded data that "can be obtained or translated through detection devices or other means into any reasonably useable or recordable format." *See* Exhibits 1-8.

19.     The NRA's definition of "refer or relate to" is similarly overbroad, including anything that might be "factually, legally or logically connected to the subject matter of the particular Request." *Id.* Additionally, the NRA's definition of "You" or "Your" is overly broad in that it includes not only the Subpoenaed Parties but also "all present and former agents, employees, representatives, advisors, officers, task force officers, attorneys, consultants, investigators, individuals, and entities acting on behalf of, or pursuant to, the direction" of the Subpoenaed Parties. *Id.*

20. Most importantly, the Subpoenas provide no limitation as to the time period for responsive documents and thus encompass the entire history of the Subpoenaed Parties' respective business relationships with AMc. However, Respondent has already represented that the relevant time period of the facts surrounding this lawsuit begin on January 1, 2015. *See* Exhibit 9 at 8 (Pl.'s Request for Prod.).[4] Although Movants maintain that the relevant period begins more recently, for purposes of this Motion, January 1, 2015 at least represents the outer bounds of potential relevance. Accordingly, any Subpoena that purports to seek documents from a date prior to January 1, 2015 is facially irrelevant as to any pre-2015 documents.

**B.   The subpoenas subject the recipients to undue burden.**

21. "Whether a burdensome subpoena is reasonable must be determined according to the facts of the case, such as the party's need for the documents and the nature and importance of the litigation." The relevance of a subpoena seeking discovery is measured by the standard articulated in Rule 26(b)(1), which limits the scope of discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1*)*. The subpoena must, therefore, be limited to documents that are relevant to any party's claim or defense and cannot be used to "develop new claims or defenses." *Kizer v. Starr Indem. & Liab. Co.*, 2019 U.S. Dist. LEXIS 76320, at *6 (W.D. Okla. May 6, 2019).

22. In addition to limiting discovery to relevant information, Rule 26 specifies that the discovery must be proportional to the needs of the case. FED. R. CIV. P. 26(b)(1). As set forth

---

[4] Only the definitions and instructions section has been included with this filing for ease of reference.

above, the documents requested in this subpoena have only tenuous relevance to the NRA's claims for fraud.  In light of the unrestricted time frame, these Subpoenas can only be intended to seek documents that might develop new claims or defenses.  Likewise, seeking decades of information from the Subpoenaed parties is simply not proportional to the needs of the case and will impose unnecessary and unfair financial burdens upon these non-parties.  The Subpoenas are, therefore, impermissible and necessarily unduly burdensome.

23.     Further, the litigants and attorneys in this case present a unique, albeit soap-opera-like, twist that militates in favor of quashing the subpoena.  The NRA's lead lawyer is not simply disinterested advocates for the NRA in this matter.  He is the son-in-law of the late Angus McQueen, AMc's former owner and CEO, and the brother-in-law of AMc's current CEO, Revan McQueen.  His animus-infused history with the McQueen family is well-known and itself insinuates his true reason for representing the NRA against his own family.  Through the issuance of the subpoena, the NRA seeks unrestricted access to decades of information about AMc's confidential business practices, including budgets, billing information, staffing, operations, and client communications, which would circumvent a protective order walling-off one of the NRA's lawyers from AMc's highly confidential information in the Virginia cases.  The dubious motives behind this overbroad subpoena create the very undue burden the law prohibits.

**C.      The Subpoenas to Williams Energy Resources, LLC and Oklahoma State University Foundation must be quashed because they were never clients of AMc.**

24.     As a preliminary matter, before addressing the merits of the remaining subpoenas, the subpoenas served upon Williams Energy Resources, LLC ("*Williams Energy*") (Exhibit 1) and Oklahoma State University Foundation (Exhibit 2) are facially invalid.  AMc has never performed any services for either entity, and as such, the subpoenas are irrelevant per se.  These subpoenas must be quashed.

**D.     The Subpoenas to WPX Energy, Inc. and Oklahoma Department of Tourism and Recreation must be quashed because AMc's business relationship ended with these companies prior to January 1, 2015.[5]**

25.     The subpoenas issued to WPX Energy, Inc. ("**WPX**") (Exhibit 3) and the Oklahoma Department of Tourism and Recreation ("**ODTR**") (Exhibit 4) are overbroad and irrelevant because AMc no longer had a business relationship with either of these companies during the time period relevant to this litigation. With regard to WPX, AMc was hired to film a one-time documentary for the energy company. Not only is the nature of the services provided to WPX entirely different from those provided to the NRA, but the business relationship ended in 2014. Even more attenuated, AMc's business relationship with ODTR ended in 2010, and AMc provided no "Digital Media" services for this organization whatsoever.

**E.     The Subpoenas to Greater Oklahoma City Chamber of Commerce and Senior Star must be quashed because AMc never provided "Digital Media" services to these companies.**

26.     By like token, because each of the Subpoenas issued by the NRA seeks documents and information related to the "Digital Media" services performed by AMc, any third-party who did not obtain "Digital Media" services from AMc is irrelevant and unduly burdensome. Therefore, in addition to the ODTR, subpoenas issued to Greater Oklahoma City Chamber of Commerce (Exhibit 5) and Senior Star (Exhibit 6) must be quashed because they are irrelevant to the claims and defenses in this matter: AMc did not provide Digital Media services to either entity.

**F.     The Subpoena to the Chickasaw Nation must be quashed because the principle of sovereign immunity renders the subpoena unenforceable.**

27.     The Chickasaw Nation subpoena (Exhibit 7) is unenforceable because the Chickasaw Nation is entitled to tribal immunity, which dictates that a federal recognized tribe is

---

[5] Respondent also served subpoenas on American Clean Skies Foundation, Remington Firearms, and Six Flags Entertainment Corporation, companies whose business relationship with AMc ceased prior to January 1, 2015.

subject to suit "only where Congress has authorized the suit or the tribe has waived its immunity." *Kiowa Tribe v. Mfg. Techs.*, 523 U.S. 751, 754 (1998). The Tenth Circuit has interpreted the term "suit" to include a subpoena duces tecum because it is a form of judicial process. *Bonnet v. Harvest (US) Holdings, Inc.*, 741 F.3d 1155, 1159-60 (10th Cir. 2014). In reversing the trial court's denial of a motion to quash served on a non-party Native American tribe, the court explained that the "logical conclusion . . . is that a subpoena duces tecum served directly on the Tribe, regardless of whether it is a party to the underlying legal action, is a 'suit' against the Tribe, triggering tribal sovereign immunity." *Id.* at 1160; *see also Alltel Communs., LLC v. DeJordy*, 675 F.3d 1100 (8th Cir. 2012) (holding that "a third-party subpoena in a private civil litigation is a "suit" for purposes of the Tribe's common law sovereign immunity."). Accordingly, because the Chickasaw Nation is a sovereign Native American tribe, the third-party subpoena issued by the NRA must be quashed.

### G.  The Subpoena to Integris must be quashed as overbroad, unduly burdensome, and an irrelevant fishing expedition.

28. Lastly, the Integris subpoena (Exhibit 8) should be quashed as facially overbroad and unduly burdensome. AMc's relationship with Integris began in 2002 and is ongoing. The subpoena requests documents unlimited in time, such that responsive documents would span nearly 20 years. Compliance with the subpoena would require Integris to turn over all documents from that time period, which would necessarily include documents that are not responsive—even assuming, for arguments' sake, that *any* documents are relevant to the underlying dispute. Therefore, compliance is unduly burdensome. In reality, though, none of the documents are relevant to claims or defenses in the lawsuit because they have no relation to the NRA, NRATV, or the parties' dealings. Rather, through the issuance of the subpoena, the NRA seeks unrestricted access to decades of information about AMc's confidential business practices, including budgets,

billing information, staffing, operations, and client communications, which would circumvent a protective order walling-off one of the NRA's lawyers from AMc's highly confidential information. The dubious motives behind this overbroad subpoena create the very undue burden the law prohibits.

**H.     The Subpoenas to Williams Energy Resources, LLC, WPX Energy, Inc., and Senior Star must be quashed because they are outside of subpoena range.**

29.     The federal rules permit a party to subpoena a non-party to produce documents only within 100 miles from "where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(2)(A). Williams Energy, WPX, and Senior Star all reside in Tulsa, Oklahoma, while the place of compliance is Oklahoma City, more than 100 miles from their residence. For that additional reason, the Subpoenas must be quashed.

**I.     Exceptional circumstances warrant transferring this Motion to the Northern District of Texas.**

30.     According to Federal Rule of Civil Procedure 45(f), the compliance court can transfer the Motion to the issuing court based on exceptional circumstances. Here, exceptional circumstances exist based on the facts described herein, including the more than 600 discovery requests at issue, the more than 20 subpoenas served, and the various pending motions to quash, including a motion to quash before the issuing court (the Northern District of Texas). Another exceptional circumstance is the dispute over the protective order and the risk that a third party's compliance with said subpoenas would circumvent the protective order. These discovery issues are likely to arise (and have arisen) in several districts and will be addressed by the Northern District of Texas, such that judicial economy supports transferring the Motion to promote uniformity.

## IV. CONCLUSION

For the foregoing reasons, Movants respectfully request this Court grant their Motion; quash the subpoenas against Chickasaw Nation, INTEGRIS Health, Inc., Greater Oklahoma City Chamber of Commerce, Oklahoma Department of Tourism and Recreation, Oklahoma State University Foundation, Senior Star, Williams Energy Resources, LLC, and WPX Energy, Inc.; transfer the Motion to the Northern District of Texas; and grant Movants any further relief, at law or in equity, to which they may be justly entitled.

Dated: February 7, 2020.

Respectfully submitted,

*/s/ R. Thompson Cooper*
R. Thompson Cooper, OBA No. 15746
ROBERSON, KOLKER, COOPER & GOERES, P.C.
16408 Muirfield Place
Edmond, OK  73013
405.606.3333 voice
405.606.3334 fax
tom@rkcglaw.com

**ATTORNEYS FOR MOVANTS ACKERMAN MCQUEEN, INC., MERCURY GROUP, INC., HENRY MARTIN, JESSE GREENBERG, WILLIAM WINKLER, AND MELANIE MONTGOMERY**

## CERTIFICATE OF CONFERENCE

On February 7, 2019, counsel for AMc conferred with counsel for the NRA regarding the Motion.  Counsel for the NRA was opposed to the relief sought and was not willing to withdraw the subpoenas.

*/s/ R. Thompson Cooper*
**R. Thompson Cooper**

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2020, I filed the foregoing document with the clerk of court for the U.S. District Court, Western District of Oklahoma. I further certify the foregoing document is being served on counsel for the NRA in the issuing court in the Northern District of Texas, Dallas Division.

*/s/ R. Thompson Cooper*
**R. Thompson Cooper**