**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| ACKERMAN MCQUEEN, INC., et al., | ) | |
| | ) | |
| Movants, | ) | |
| | ) | |
| v. | ) | Case No. MC-20-1-HE |
| | ) | |
| NATIONAL RIFLE ASSOCIATION OF | ) | |
| AMERICA, et al., | ) | |
| | ) | |
| Respondents. | ) | |

**RESPONDENT NATIONAL RIFLE ASSOCIATION OF AMERICA'S**
**RESPONSE AND OBJECTION TO MOVANTS' MOTION TO QUASH**
**THIRD-PARTY SUBPOENAS [DOC. NO. 1]**

**LYTLE, SOULÉ & FELTY, P.C.**

Matthew K. Felty, OBA #31057
1200 Robinson Renaissance
119 N. Robinson Avenue
Oklahoma City, OK 73102
Telephone: (405) 235-7471
Facsimile: (405) 232-3852
mkfelty@lytlesoule.com

**ATTORNEYS FOR RESPONDENTS NATIONAL**
**RIFLE ASSOCIATION OF AMERICA AND**
**WAYNE LAPIERRE**

# **TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ............................................................................ 6

II.     FACTUAL BACKGROUND ................................................................................ 8

    A.      The Texas Action. ..................................................................................... 8

    B.      NRATV: A Failed Endeavor. ..................................................................... 9

III.    ARGUMENT & AUTHORITIES ....................................................................... 10

    A.      AMc Lacks Standing To Challenge The Third-Party Subpoenas. .............. 11

    B.      AMc's Overbreadth Challenge Also Lacks Merit. ..................................... 12

    C.      Transfer To The Northern District Of Texas Is The Proper Course of
        Action. ..................................................................................................... 16

    D.      The Subpoena Seeks Relevant Documents. ............................................... 17

    E.      The NRA's Other Discovery Requests in the Related Virginia Action
        Are Irrelevant To The Subpoena At Issue. ................................................ 22

    F.      Plaintiff Is Entitled to an Award of Its Reasonable Attorneys' Fees
        and Costs. ................................................................................................. 23

IV.     CONCLUSION ................................................................................................. 23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bays Expl., Inc. v. Pensa, Inc.*,
No. CIV-07-0754-D, 2009 WL 10674502 (W.D. Okla. Aug. 20, 2009).................... 12

*Brady v. Klentzman*,
515 S.W.3d 878 (Tex. 2017)............................................................................ 19

*Bunch v. Artz*,
71 Va. Cir. 358 (2006) ................................................................................... 11

*In re Cassell*,
Case No. 2:16-mc-00602-DB-EJF, 2016 WL 3645166 (D. Utah June
30, 2016) ...................................................................................................... 16

*Charles Schwab & Co. v. Highwater Wealth Mgmt., LLC*,
No. 17-CV-00803-CMA-NYW, 2017 WL 4278494 (D. Colo. Sept. 27,
2017) ........................................................................................................... 21

*Edgefield Holdings v. Gilbert*,
Civ. No. 3:7-mc-74-N-BN, 2018 WL 1138516 (N.D. Tex. March 8,
2018) ........................................................................................................... 21

*FDIC v. Galan–Alvarez*,
No. 15–mc–752, 2015 WL 5602342 (D.D.C. Sept. 4, 2015) ........................... 17

*Flynn v. FCA US LLC*,
216 F. Supp. 3d 44, 47 (D.D.C. 2016) .......................................................... 17

*Howard v. Segway, Inc.*,
No. 11–CV–688–GKF–PJC, 2012 WL 2923230 (N. D. Okla., July 18,
2012) ...................................................................................................... 11, 12

*JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*,
546 S.W.3d 648 (Tex. 2018), *reh'g denied* (June 15, 2018) ........................... 18

*Linder v. Nat'l Sec. Agency*,
94 F.3d 693 (D.C. Cir.1996) ........................................................................ 14

*Lynx System Developers, Inc. v. Zebra Enterprise Solutions Corporation*,
Civ. Act. 2:17-mc-43, 2017 WL 3457038 (S.D. Ohio 2017) .......................... 17

*Manag. Comp. Grp. Lee v. Okla. State Univ.*,
  2011 U.S. Dist. LEXIS 127693 (W.D. Okla., Nov. 3, 2011) ...................................... 10

*National Rifle Association of America v. Ackerman McQueen, et al.*,
  Civ. ........................................................................................................................ 8, 10

*National Rifle Association of America v. Ackerman McQueen, Inc., et al.*,
  Civil Action No. 3:19-cv-02074-G (N.D. Tex.) .................................................. 6, 8, 13

*In re Nonparty Subpoena Duces Tecum*,
  327 F.R.D. 23 (D.D.C. 2018) ....................................................................................... 17

*Sales v. Kecoughtan Housing Co. Ltd.*,
  690 S.E.2d 91 (Va. 2010) ............................................................................................. 18

*Smith v. Midland Brake, Inc.*,
  162 F.R.D. 683 (D. Kan. 1995) .................................................................................... 11

*Stewart v. Mitchell Transp.*,
  No. 0CIV.A. 01-2546-JWL, 2002 WL 1558210 (D. Kan. July 11, 2002) .................. 11

*In re Subpoena*,
  CIV-04-1774-W, 2005 WL 8157763 (W.D. Okla. Jan. 26, 2005) ............................... 16

*Tronfeld v. Nationwide Mut. Ins. Co.*,
  636 S.E.2d 447 (Va. 2006) ........................................................................................... 19

*W. Convenience Stores, Inc. v. Suncor Energy (U.S.A.) Inc.*,
  No. 11-CV-01611-MSK-CBS, 2014 WL 1257762 (D. Colo. Mar. 27,
  2014) ............................................................................................................................ 14

*Wiwa v. Royal Dutch Petroleum Co.*,
  392 F.3d 812 (5th Cir. 2004) .......................................................................... 11, 14, 21

**Other Authorities**

Fed. R. Civ. P. 45(d)(2)(A) and 2013 ............................................................................. 16

Fed. R. Evid. 406 ............................................................................................................. 18

Fed. R. Civ. P. 45(c)(2)(a) ......................................................................................... 15, 16

Fed. R. Civ. P. 45(d)(3) ................................................................................................... 10

Fed. R. Civ. P. 45(f).......................................................................................................... 7

Fed. R. Civ. P. 5 ..................................................................................................... 16

Fed. R. Civ. P. 45 ................................................................................................... 16

Fed. R. Civ. P. 45(c) ........................................................................................ 11, 16

Fed. R. Civ. P. 45 (d)(3)(B)(i) ........................................................................... 11

**COMES NOW** Respondent National Rifle Association of America (the "NRA") and hereby responds and objects to the Motion to Quash Third-Party Subpoenas (the "Motion to Quash") filed by Ackerman McQueen, Inc., Mercury Group, Inc., Henry Martin, William Winkler, Melanie Montgomery, and Jesse Greenberg (collectively, "AMc"), as follows:

## I.
## PRELIMINARY STATEMENT

In order to avoid disclosure of relevant information from third parties, Movants Ackerman McQueen, Inc., Mercury Group, Inc., Henry Martin, William Winkler, Melanie Montgomery, and Jesse Greenberg (collectively, "AMc"), seek to quash subpoenas served by Respondent the NRA on the following entities: the Greater Oklahoma City Chamber of Commerce, the Oklahoma Department of Tourism and Recreation, Oklahoma State University Foundation, Senior Star, Williams Energy Resources, LLC and WPX Energy, Inc., (the "Subpoena Recipients").[1]

The subpoenas seek documents relevant to fraud claims the NRA is asserting in a case pending in the United States District Court for the Northern District of Texas and that are based, in part, on representations made by AMc concerning the live digital media platform managed by AMc and known as NRATV.[2] NRATV is not the first digital media

---

[1] The challenged subpoenas are attached as Exhibits 1-8 of AMc's Motion to Quash. However, included therein are non-operative subpoenas to the Chickasaw Tribe, who refused service based on sovereign immunity and to Integris for failure to serve a duly authorized agent.  The NRA intends to re-serve a similar and valid subpoena to Integris.

[2] *National Rifle Association of America v. Ackerman McQueen, Inc., et al.*, Civil Action No. 3:19-cv-02074-G (N.D. Tex.) (the "Texas Action").

platform that AMc has induced its clients to underwrite. Indeed, a series of digital media platforms, created and managed by AMc on behalf of other clients, have been shut down because of their ineffectiveness, costliness, and AMc's unwillingness to provide accurate performance data to current and former clients, including the Subpoena Recipients.  When AMc induced the NRA into investing tens of millions of dollars into its own digital media platform based on representations that the costs would easily be recouped through advertisement sales following "sky-high" viewership numbers, AMc knew about its long line of failures in this market and, therefore, knowingly defrauded the NRA.

AMc's Motion to Quash (the "Motion") the NRA's subpoenas to these Subpoena Recipients on the basis of undue burden has no merit at all because AMc does not have standing to raise that challenge. In any event, AMc offers no proof in support of its contentions that the NRA's subpoenas seek information that is irrelevant and burdensome. The NRA's requests are narrowly tailored and seek documents that are relevant to the NRA's corresponding fraud claims against AMc.  Finally, transfer of this Motion to the Northern District of Texas is proper under Federal Rule of Civil Procedure 45(f) and in the interests of justice, efficiency, and uniformity in rulings, a point on which AMc agree. For these reasons, and as further discussed below, AMc's Motion should be denied in its entirety.

## II.
## FACTUAL BACKGROUND

**A.**    **The Texas Action.**

In light of recently unearthed text messages and emails, the NRA filed its First Amended Complaint ("FAC") on October 25, 2019 in the Texas Action.  The FAC contains claims for fraud, including AMc's fraudulent conduct related to NRATV.  The FAC includes allegations that AMc, the NRA's long-standing public relations firm, had engaged in wide-ranging malfeasance beginning in at least 2016 that amounted to a startling betrayal by a fiduciary of the NRA.[3]  The FAC further alleges that AMc previously attempted to conceal its wrongful conduct by obstructing the NRA's investigation, an inquiry that resulted in attempted extortion and an unsuccessful coup of the NRA's leadership in April 2019.[4]

Indeed, upon publication of just part of the NRA's complaint in the related litigation before the Virginia state court,[5] the Honorable Dan Boren, an executive of the Chickasaw Nation (and AMc client) remarked: "*I bet Ackerman is in trouble on this one.  They can't produce the backup to the invoices and were allocating full salary to these employees [to the NRA] that may have been working on our accounts*."[6]

---

[3] Ex. 1, FAC at ¶¶ 143-151.

[4] *Id.* at ¶¶ 47-58.

[5] *National Rifle Association of America v. Ackerman McQueen, et al.*, Civ. Cons. Case Nos. CL19001757; CL19002067; CL19002886 (Va. Cir. Ct.), (the "Virginia Action"). The Virginia Action involves the NRA's claims against AMc including claims for breach of contract, breach of fiduciary duty, and fraud.

[6] *Id.*, ¶ 125.

**B.**   **NRATV: A Failed Endeavor.**

AMc's pattern of fraudulent activity involved in the development, launch, and eventual failure of NRATV, a live digital media platform sold, managed, and operated by AMc is striking.[7]  In 2016, AMc began lobbying the NRA, touting the benefits of a live-stream, NRA-branded digital media broadcasting platform.  AMc emphasized that NRATV presented "a good opportunity to generate revenue" and that the NRA's initial investment of $10 million dollars would "pay for itself" within three years, based on AMc's experience with previous platforms developed for other clients.[8]

However, what quickly became apparent inside AMc was that no one watched NRATV's live broadcasting feed.[9]  To cover up that fact, AMc plied NRA executives that were not as familiar with the project, with written presentations that systematically misrepresented and overstated NRATV's valuation and viewership levels.  AMc did not disclose the fact that the valuation and viewership metrics it provided to the NRA omitted the number of "unique" viewers of NRATV—***an important metric that is the industry standard for viewership performance***.[10]  AMc once claimed that NRATV had over *200 million viewers* in a single year—that is, two-thirds of the United States—and doubled down by misleading the NRA by using out-of-context metrics to create the false impression

---

[7] *Id.* ¶¶ 25-27.

[8] *Id.* at ¶¶ 25-26.

[9] *Id.* at ¶ 31.

[10] *Id.* at ¶¶ 28-37.

that ***NRATV shows were comparable in value to Anderson Cooper on CNN*** and other prime-time shows.[11]

Eventually, the NRA became suspicious that AMc was not accurately reporting NRATV's reach and began to request viewership information, in particular information on unique viewers.[12]  These requests were consistently evaded, rebuffed, or explained away with further misrepresentations.[13]  Even by May 2019, AMc had not turned over the unique viewership data requested over a year before, despite a contractual obligation to do so.[14] Seeing little value in pouring tens of millions of additional dollars into the platform, the NRA shuttered NRATV in June 2019.

### III.
### ARGUMENT & AUTHORITIES

AMc bears the "heavy burden" of demonstrating that the Subpoenas should be quashed by this Court.  *See Manag. Comp. Grp. Lee v. Okla. State Univ.*, 2011 U.S. Dist. LEXIS 127693 (W.D. Okla., Nov. 3, 2011) ("A party seeking to quash a subpoena duces tecum has a particularly heavy burden as contrasted to a party seeking only limited protection.") (quoting *In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig.*, 669 F.2d 620, 623 (10th Cir.1982)).  Federal Rule of Civil Procedure 45(d)(3) governs the circumstances in which a court may quash or modify a subpoena. A court may quash or modify a subpoena that: (i) fails to allow a reasonable time to

---

[11] *Id.* at ¶ 35.

[12] *Id.*

[13] *Id.* at ¶¶ 31, 38-40.

[14] *Id*.

comply; (ii) requires a person to comply beyond the geographic limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden.  In addition, a court may quash or modify a document subpoena where it "requires disclosure of a trade secret or other confidential research, development, or commercial information[.]" *Id.* at Rule 45 (d)(3)(B)(i).  A court should endeavor to modify or limit a subpoena before quashing it entirely.  *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004); *Bunch v. Artz*, 71 Va. Cir. 358 (2006) (modifying a subpoena instead of quashing it outright).

## A.     AMc Lacks Standing To Challenge The Third-Party Subpoenas.

AMc lacks standing to challenge the Subpoenas to third-parties, and its Motion falters on this ground alone.  As Wright & Miller explain, "[o]rdinarily, a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action." Fed. Prac. & Proc., § 2459 (3d ed. 2019) (collecting cases).  Courts in this circuit have held accordingly. *See Howard v. Segway, Inc.*, No. 11–CV–688–GKF–PJC, 2012 WL 2923230, at *4 (N. D. Okla., July 18, 2012) ("Generally, absent a claim of privilege, personal interest or proprietary interest, a party lacks standing to quash a subpoena served on a third party.") (citing *Washington v. Thurgood Marshall Academy*, 230 F.R.D. 18 (D.D.C. 2005)); *Smith v. Midland Brake, Inc.*, 162 F.R.D. 683, 685 (D. Kan. 1995).[15] AMc does not assert any personal right or privilege with respect to the subpoenaed information.

---

[15] *See also Stewart v. Mitchell Transp.*, No. 0CIV.A. 01-2546-JWL, 2002 WL 1558210, at *1 (D. Kan. July 11, 2002) ("Generally speaking, a party to the lawsuit does not have standing to quash a subpoena served on a nonparty."); *Smith v. Midland Brake, Inc.*, 162 F.R.D. 683, 685 (D. Kan.1995) ("A motion to quash a subpoena may only

In short, AMc's motion to quash the Subpoenas is procedurally improper and should be disregarded.  Moreover, AMc is not burdened by these Subpoenas to third parties. It therefore may not seek to quash the subpoenas on that basis, either. *See Howard v. Segway, Inc.*, No. 11–CV–688–GKF–PJC, 2012 WL 2923230, at *5 (N. D. Okla., July 18, 2012) ("Even where a party has standing to quash a subpoena based on privilege or a personal right, it still lacks standing to object on the basis of undue burden.") (citing *Public Service Co. of Oklahoma v. A Plus, Inc.*, 2011 U.S. Dist. LEXIS 16087, 2011 WL 691204, at *5 (W.D. Okla., Feb. 16, 2011)).

## B.    AMc's Overbreadth Challenge Also Lacks Merit.

Even if AMc had standing, AMc offers no proof in support of its argument that the requests are overbroad. AMc complains about the terms "documents and records," "refer," "relate," "you," or "your," but the NRA's use of those terms gives them no greater breadth than they bear in ordinary usage.[16]  Indeed, the NRA's use of those terms is no broader— and, in fact, in some respects, is narrower—than AMc's use of analogous terms.  *Compare* NRA's definition of "refer or relate to" *with* AMc's definition & NRA's definition of "document and record" *with* AMc's definition.[17]   Comparing these terms shows that the

---

be made by the party to whom the subpoena is directed except where the party seeking to challenge the subpoena has a personal right or privilege with respect to the subject matter requested in the subpoena.") (internal quotations omitted); *Bays Expl., Inc. v. Pensa, Inc.*, No. CIV-07-0754-D, 2009 WL 10674502, at *2 (W.D. Okla. Aug. 20, 2009) (same).

[16] *See* Mot. ¶¶ 17-19.

[17] *See* Ex. 2, NRA subpoena to WPX, Definitions at Section I, p. 1-2.  The AMc definitions come from a subpoena to Forensic Risk Alliance in the Northern District of Texas action. A copy of that subpoena is included in the appendix as Ex. 3.  *See* Section II, ¶¶ 2, 14, and 17. A comparison of "you" and "your" is possible by locating Section II, No.

NRA's use is no broader than AMc's use and is consistent with standard discovery practice. For this reason, in tandem with AMc's complete failure to provide proof explaining and substantiating the Subpoena's purported overbreadth, the argument should be rejected.

AMc's time period argument fares no better.[18] The NRA did not include a specific time period for its requests because the NRA did not know the length of time during which each of the Subpoena Recipients paid AMc to operate a digital platform. The NRA's investigation identified eleven subpoena recipients that were current or former AMc clients and were sold "branded media" products by AMc, some of which include the Subpoena Recipients. However, it was not certain *when* the Subpoena Recipients' digital systems were developed and launched. The NRA is willing to adjust the relevant time period once the Subpoena Recipients respond and identify the time frame in which AMc created and operated the respective digital platforms. Indeed, the NRA has already engaged in such conversations with the Oklahoma Department of Tourism and Recreation, the Greater Oklahoma City Chamber of Commerce, and Oklahoma State University ("OSU"). This procedure has presented no problems[19]

In any event, modifying a subpoena is preferable to outright quashing it. For example, in *Wiwa*, the Court of Appeals for the Fifth Circuit determined that the plaintiff's

---

2 of Ex. 3 (AMc's FRA subpoena) and Section I No. 5 of Ex. 2 (NRA's WPX Subpoena). *See also* AMc's First Requests for Production to Respondents, at ¶ 63 (defining "document") and ¶ 66 (defining "relate" "related to" or "relating to"), marked Ex. 4.

[18] Mot. ¶¶ 20, 22.

[19] Ex. 5-7, correspondence with counsel for the Oklahoma Department of Tourism and Recreation, the Greater Oklahoma City Chamber of Commerce, and Oklahoma State University. AMc's arguments as to these subpoenas are thus moot.

subpoena was overbroad due to its temporal scope yet limited the subpoena rather than quashing it. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818, 821-22 (5th Cir. 2004) ("Generally, modification of a subpoena is preferable to quashing it outright.").[20] The *Wiwa* Court reasoned that despite the overbroad time frame, there were periods and subject matters within that period that were relevant and the Court modified the subpoena accordingly. *Id.* at 821. Here, if necessary, the Court could indeed modify the period of time for which information is requested, to correspond to the periods during which the Subpoena Recipients obtained and used digital media technology from AMc.

It is also unclear why AMc claims that it "never performed any services"[21] for Williams Energy Resources, LLC, ("Williams Energy"), particularly when AMc itself featured a project titled Energy News Live, which AMc claimed was *provided for* Williams Energy Resources, LLC, on its own website.[22] AMc likewise claims that it never provided any "Digital Media" services to the Greater Oklahoma City Chamber of Commerce (the

---

[20] *See also W. Convenience Stores, Inc. v. Suncor Energy (U.S.A.) Inc.*, No. 11-CV-01611-MSK-CBS, 2014 WL 1257762, at *10 (D. Colo. Mar. 27, 2014) (citing *Williams v. City of Dallas,* 178 F.R.D. 103, 110 (N.D.Tex.1998) (observing that "[m]odification of a subpoena is preferable ... to quashing it")); *Linder v. Nat'l Sec. Agency,* 94 F.3d 693, 698 (D.C. Cir.1996) (same).

[21] Mot. ¶ 24.

[22] AMc featured the Energy News Live project on its former website at the following address: https://www.am.com/projects/energy-news-live-project/. The project is also described as such in an article by Ryan Winkler-Herr, *A Room Full of Energy: Why & How Branded News was Born,* Modiv (Jul. 20, 2018), available at https://insights.modiv.works/article/1158/a-roomful-of-energy-why-and-how-branded-news-was-born/ (last visited: February 18, 2020), and attached as Ex. 8.

"Chamber") or Senior Star.[23]  However, AMc's former website featured the digital projects for the Chamber and Senior Star. Indeed, AMc described creating a video project for Senior Star,[24] and a digital media magazine for the Chamber called VeloCity Magazine.[25]

The NRA has also already conferred with counsel for the Oklahoma State University ("OSU"), who clarified that, as AMc notes,[26] the Oklahoma State University *Foundation* was never a client of AMc's.  OSU, however, was a client of AMc's, and counsel for OSU has agreed to accept service of the subpoena and has agreed to produce responsive documents.[27]

Finally, as to the subpoenas to WPX, Williams Energy, and Senior Star, AMc also argues that they should be quashed because the indicated production location is more than 100 miles from their places of residence.[28]  Federal Rule of Civil Procedure Rule 45(c)(2)(a) states that the issuing court (not the compliance court) can quash the subpoena if it requires a third party "*to travel* to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person."  *Id.* (emphasis

---

[23] Mot. ¶ 26.

[24] AMc featured Senior Star as a client for whom it prepared a video project on its former website at https://www.am.com/projects/senior-star-project/. A screenshot of the former webpage is attached as Ex. 9.

[25] AMc featured the Chamber as a client for whom it created the VeloCity digital magazine on its former website at https://www.am.com/projects/greater-oklahoma-city-chamber-project/. Upon a reasonable search, a screenshot of the former webpage is not available in online archives.

[26] Mot. ¶ 24.

[27] Ex. 7, correspondence with counsel for OSU.

[28] It should be noted that Tulsa, OK is 107 miles from Oklahoma City, OK.

added).  However, Rule 45 does not require the recipient to travel or to appear to produce

documents, and nothing prevents the recipient from producing documents by any of the

service methods set out in Rule 5, including by mail or electronically.[29]  The entities

subpoenaed are merely required to mail or deliver the documents to the NRA.  In fact,

Senior Star has already availed itself of this method.  Thus, AMc's objection cannot be

addressed by this Court and is otherwise inapplicable.

Accordingly, for all these reasons, the Court should deny the Motion.

**C.**     **Transfer To The Northern District Of Texas Is The Proper Course Of Action.**

The Northern District of Texas has the greatest familiarity with the nature of this

case.  It is presently considering one motion to dismiss and two motions to compel.  Indeed,

one of the motions to compel ***raises an analogous issue*** to whether the Subpoena

Recipients' digital media experiences are relevant to the NRATV claims.[30]  Moreover

similar disputes may arise in connection with the subpoenas, as AMc has sought to quash

relevant evidence in other districts across the country.  *In re Subpoena,* CIV-04-1774-W,

2005 WL 8157763, at *1 (W.D. Okla. Jan. 26, 2005) (granting a motion to transfer a motion

to quash a subpoena to the court where the underlying action was pending as it would serve

the interests of justice, efficiency, and consistency); *In re Cassell*, Case No. 2:16-mc-

00602-DB-EJF, 2016 WL 3645166, at *2 (D. Utah June 30, 2016) (identifying the

"interconnectedness of [the] subpoena with other discovery issues pending" in the

---

[29] Fed. R. Civ. P. 45(d)(2)(A) and 2013 Advisory Committee Notes to FRCP 45(c).

[30] Ex. 10, Pl's. Mot. to Compel Production of Docs. and for Sanctions, Case No. 3:19-cv-02074-G (N.D. Tex.) filed Jan. 22, 2020, ECF No. 48, at p. 8.

underlying litigation as supporting "transfer to allow all of these rulings to create a consistent set of discovery decisions to address all matters in the litigation").[31] Here, the parties are in agreement that exceptional circumstances warrant the transfer of the motion to the Northern District of Texas.[32]  For these reasons, transfer to the Northern District is the reasonable course of action.

### D.    The Subpoena Seeks Relevant Documents.

Although AMc's relevance argument should be made to the court where the matter is pending and that has superior knowledge of the facts and circumstances of the case,[33] AMc nevertheless also fails to offer any proof in support of its argument that the NRA's subpoenas do not seek relevant documents. To the contrary, the sought-after information is relevant because the NRA believes that many, if not all, of the prior digital media campaigns that AMc used to induce the NRA to invest in NRATV were abject failures. Just like NRATV, those digital media campaigns were shut down because of their general ineffectiveness, high costs, and AMc's reluctance to be transparent by providing

---

[31] *See also In re Nonparty Subpoena Duces Tecum*, 327 F.R.D. 23, 25-26 (D.D.C. 2018); *Lynx System Developers, Inc. v. Zebra Enterprise Solutions Corporation*, Civ. Act. 2:17-mc-43, 2017 WL 3457038 at *3 (S.D. Ohio 2017) (transferring motion to quash where, as here, the parties agreed transfer was proper, the same issues were pending before the "home court," and transfer would benefit the interests of judicial economy, and the avoidance of inconsistent rulings).  For these reasons, transfer to the Northern District is the reasonable course of action.

[32] Mot. ¶ 30.

[33] *See Flynn v. FCA US LLC*, 216 F. Supp. 3d 44, 47 (D.D.C. 2016) (transferring a motion to quash to the "home" court finding that it was in a much better position to evaluate relevance); *FDIC v. Galan–Alvarez*, No. 15–mc–752, 2015 WL 5602342, at *3 (D.D.C. Sept. 4, 2015) (explaining that making a relevance determination can require a court "to delve into the intricacies of the underlying dispute").

performance data to clients like the NRA who were underwriting the platform.[34]  The NRA issued these document subpoenas to AMc's former and current clients, requesting documents reasonably calculated to show whether those clients experienced similar results. The subpoenaed information is therefore anticipated to demonstrate that AMc **_knowingly_** made the false statements about NRATV discussed above and in the FAC, particularly with respect to AMc's claims of rapid profitability. This is an **_element_** of the NRA's fraud claims and, therefore, highly relevant. *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018), *reh'g denied* (June 15, 2018) (listing elements of fraud claims under Texas law); *Sales v. Kecoughtan Housing Co. Ltd.,* 690 S.E.2d 91, 94 (Va. 2010*)* (discussing *mens rea* requirement for fraud under Virginia law, the law likely applicable to at least the NRATV fraud claims).

And if the subpoenas reveal, as expected, a slew of failed digital media experiments, as well as a pattern of concealment and hostility to client requests, like the NRA experienced, the documents would **_factually corroborate_** the NRA's theory of liability. *See* Fed. R. Evid. 406 ("Evidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice.")

In addition, the subpoena seeks documents relevant to AMc's counterclaim—in particular AMc's claim for reputational harm and damages allegedly sustained by the

---

[34] Ex. 1, FAC at ¶¶ 4-5.

NRA.[35]  If the subpoenas reveal, as the NRA anticipates, a long running series of failures in the digital media market and tend to support its NRATV fraud claims, then such evidence would be relevant to AMc's ability to recover damages. *See Brady v. Klentzman*, 515 S.W.3d 878, 886 (Tex. 2017) ("where the plaintiff seeks actual damages for loss of reputation or mental anguish (general damages) or for economic loss (special damages), he must present evidence of the existence and amount of these damages"); *Tronfeld v. Nationwide Mut. Ins. Co.,* 636 S.E.2d 447, 450 (Va. 2006) ("A person maligned by defamation [or libel] . . . may recover compensatory damages for injury to reputation, humiliation, and embarrassment"). Simply put, by seeking reputational damages, AMc opened the door to reputational discovery.  Reputational discovery necessarily involves an evaluation of AMc's *reputation* with its former and existing clients like the NRA.

The reasonableness of the subpoena is further demonstrated by the evidence the NRA has uncovered so far.  For example, The American Clean Skies Foundation ("Clean Skies"), an energy-industry advocacy group, opted for an AMc-branded digital media platform.  Clean Skies' ensuing experience with AMc was so disastrous that its former general counsel contacted the NRA and offered assistance, noting: ***"I'm pleased to see [AMc] get called on their practices finally."***  And what did those practices include? Steep

---

[35]  Ex. 11, Defs.' Am. Answer and Defendant/Counter-Plaintiff Ackerman McQueen, Inc.'s Am. Countercl. and Third-Party Compl., Case No. 3:19-cv-02074-G (N.D. Tex.), Nov. 15, 2019, ECF No. 31 ¶¶ 7-8, 118-124.

costs that were not recoverable and AMc's refusal to respond to questions and requests for information on budgets and operations.[36]

For all these reasons, the NRA issued document subpoenas to the Subpoena Recipients (and others), that are AMc's former or current clients and received similar services, with narrowly tailored categories of requests for documents that are reasonably calculated to elicit relevant evidence. The subpoenas reasonably seek "[d]ocuments concerning the Digital Media programming and content or platform that AMc provided," as well as any "Viewership Analytics provided by AMc" in order to determine if those metrics were the same or different as those provided to NRATV and the reasons why. Consistent with the experience of NRATV and Clear Skies, the subpoena targets "[d]ocuments reflecting any concerns or requests to AMc for information" about the recipients' digital media projects, including "documents concerning AMc's response" to requests for information made by its clients. Among other requests, the subpoenas seek the production of "budgets . . . concerning the Digital Media content and platform" to better understand how AMc predicted or forecasted the cost and performance of the platform[37] In short, these requests are narrowly tailored to the NRA's fraud claim as to NRATV.

In response, AMc generally contends that the documents sought "have only tenuous relevance to the NRA's claims for fraud" and that because of the "unrestricted timeframe" the subpoenas can "only be intended to seek documents that might develop new claims or

---

[36] Ex. 1, FAC ¶ 43.

[37] Mot., Ex. B.

defenses."[38]  This argument turns the burden of proof on its head and ignores that the NRA

has addressed the time period objection above.  Nonetheless, in the context of a motion to

quash, the ***movant bears the burden of proving that the subpoena seeks irrelevant or***

***otherwise overbroad information***.  *See Wiwa v. Royal Dutch Shell Petroleum Co.*, 392

F.3d 812, 818 (5th Cir. 2004) ("The moving party has the burden of proof to demonstrate

that compliance with the subpoena would be unreasonable and oppressive."); *Charles*

*Schwab & Co. v. Highwater Wealth Mgmt., LLC*, No. 17-CV-00803-CMA-NYW, 2017

WL 4278494, at *3 (D. Colo. Sept. 27, 2017) ("[T]he responding party bears the burden of

establishing that the requested discovery does not come within the scope of relevant

evidence, or is of such marginal relevance that the potential harm of discovery is

outweighed by the benefit.").

AMc also baldly claims AMc's services to WPX Energy, Inc. ("WPX") and the

Oklahoma Department of Tourism and Recreation "ended … prior to January 1, 2015,"

and that the "nature of the services provided to WPX [were] entirely different from those

provided to the NRA," making the requests "overbroad and irrelevant."[39]  Setting aside the

fact that AMc has submitted no proof to support its categorical statements, *see Edgefield*

*Holdings v. Gilbert,* Civ. No. 3:7-mc-74-N-BN, 2018 WL 1138516, at *10 (N.D. Tex.

March 8, 2018) (movant has the burden of proof), if these statements are true, the more

logical course would be for the Subpoena Recipients themselves to respond to the subpoena

---

[38] Mot. ¶ 22.

[39] Mot. ¶ 25.

and state they possess no relevant documents.  Yet Subpoena Recipients Williams Energy and the Oklahoma State University have agreed to conduct a reasonable search and produce responsive and relevant documents, and Senior Star has already made a production.[40]

Additionally, the fact that WPX and the Oklahoma Department of Tourism and Recreation purportedly ended their business relationships with AMc prior to 2015, or that the services provided to WPX were allegedly, without substantiation, "entirely different from those provided to the NRA,"[41] is of no consequence. The NRA believes AMc provided digital media services to the Subpoena Recipients, and any documents regarding AMc's services would be probative of the NRA's claims, as discussed above.  Indeed, counsel for the Oklahoma Department of Tourism and Recreation has been in contact with the NRA and has already agreed to produce responsive documents.[42]   In this respect, AMc's arguments regarding the Oklahoma Department of Tourism and Recreation are moot for purposes of this Motion.  Also, at best, whether one digital system is so materially different than NRATV should not be grounds to quash the subpoena.  AMc can make such a fact-intensive argument to the trier of fact or by way of a motion *in limine*.

## E.    The NRA's Other Discovery Requests in the Related Virginia Action Are Irrelevant To The Subpoena At Issue.

Although the propriety of the discovery in the Virginia Action is not before this Court, it should be noted that the NRA's efforts before and during the Virginia Action to

---

[40] *See* Exs. 12, 7, 13.

[41] Mot. ¶ 25.

[42] Ex. 6, email correspondence with counsel for the Oklahoma Department of Tourism and Recreation.

obtain relevant and responsive documents was largely unsuccessful.[43] Moreover, the NRA's discovery requests in the Virginia Action are reasonable given the number of complex claims at issue in the case. However, because the NRA's discovery requests have no legal bearing on the validity of the Subpoenas at issue, AMc's charge falls flat.

**F.    Plaintiff Is Entitled to an Award of Its Reasonable Attorneys' Fees and Costs.**

AMc's motion is completely without merit. AMc does not have standing to bring its Motion, and even if it did, it provided no proof in support of its arguments that the requests are overbroad and seek irrelevant information. Also, not one of the Subpoena Recipients has filed a Motion to Quash their own subpoenas. The NRA therefore seeks to recover such fees and costs which it was forced to incur in order to oppose the frivolous Motion.

## IV.
## CONCLUSION

For all the reasons stated herein, Respondent respectfully requests the Court transfer the Motion to the Northern District of Texas or deny the Motion or, if necessary, modify the subpoena.  Respondent further request that this Court award its attorneys' fees and costs incurred in responding to this Motion, and any other relief which the Court deems proper.

---

[43] Ex. 1, FAC ¶¶ 45-57.

**WHEREFORE**, above premises considered, the NRA prays that the Court deny AMc's motion to quash; for costs and attorney's fees incurred in connection herewith; and for any and all further relief deemed just and equitable by the Court.

Dated: February 21, 2020        Respectfully submitted by:

**LYTLE, SOULÉ & FELTY, P.C.**

*/s/Matthew K. Felty*_____
Matthew K. Felty, OBA #31057
1200 Robinson Renaissance
119 N. Robinson Avenue
Oklahoma City, OK 73102
(405) 235-7471 (Telephone)
(405) 232-3852 (Facsimile)
mkfelty@lytlesoule.com

**ATTORNEYS FOR RESPONDENTS NATIONAL RIFLE ASSOCIATION OF AMERICA AND WAYNE LAPIERRE**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was electronically served via the Court's electronic case filing system upon all counsel of record on this 21st day of February 2020.

*/s/Matthew K. Felty*
Matthew K. Felty, Esq.

25