**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| ACKERMAN MCQUEEN, INC., MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, MELANIE MONTGOMERY, AND JESSE GREENBERG, <br>     *Movants*, <br><br> v. <br><br> NATIONAL RIFLE ASSOCIATION OF AMERICA and WAYNE LAPIERRE, <br>     *Respondents*. | § § § § § § § § § § § § § § | Case No. 20-MC-001-HE |

## MOTION TO QUASH THIRD PARTY SUBPOENA ON INTEGRIS HEALTH, INC.

Ackerman McQueen, Inc. ("***AMc***"), Mercury Group, Inc., Henry Martin, William Winkler, Melanie Montgomery, and Jesse Greenberg (collectively, "***Movants***") file this *Motion to Quash Third-Party Subpoena on INTEGRIS Health, Inc.* (the "***Motion***" and "***Integris***"), attached as **Exhibit 1** hereto, and respectfully show as follows:

### I.    SUMMARY

Movants previously filed a motion to quash the National Rifle Association's ("***Respondent***" or "***NRA***") eight third-party subpoenas (including Integris) on February 7, 2020, in the present Court as the place where compliance was required.[1] Movants sought transfer of the Motion to the Northern District of Texas where the underlying matter is pending. Respondents agreed with the transfer. This Court transferred that motion on February 25, 2020.[2]

Since then, Respondents served an "amended" subpoena on one of the same entities – Integris -- which still fails to cure the flaws described in the previous motion. Said amended

---

[1] *Ackerman McQueen, Inc., et al. v. NRA, et al.*, Miscellaneous Case No. MC-20-1-HE (W.D. Okla.); FED. R. CIV. P. 45(d)(3)(A).
[2] *See* ECF 07, *Ackerman McQueen, Inc., et al. v. NRA, et al.*, Miscellaneous Case No. MC-20-1-HE (W.D. Okla.).

subpoena must be quashed for the same reasons previously set forth: It is overbroad and harassing, and it seeks information wholly irrelevant to the claims and defenses in the lawsuit. Movants request the present Court to supplement its transfer to the Northern District of Texas by including the present motion to quash, so that all pending discovery disputes may be disposed of collectively and efficiently.

## II.   BACKGROUND

### A.   Overview of Claims

1. The NRA's current First Amended Complaint asserts causes of action for fraud and breach of contract, which it argues are relevant to the Integris subpoena.[3]

2. In response, AMc asserted a counterclaim and third-party claims, including libel *per se* (the NRA falsely accuses AMc of extortion) and fraud (relating to NRATV and compensation of talent hired to promote the NRA).[4]

### B.   The Integris Subpoena

3. The NRA served its amended Integris subpoena on February 20, 2020, requiring a response on March 4, 2020, at 9:00 a.m. Notably, none of the parties' claims or counterclaims directly reference or relate to Integris. In fact, the connection between Integris and Respondent's Amended Complaint is feeble at best. The only possible reference to Integris, or any "Digital Media" services provided to it by AMc, occurs in the fifth unnumbered paragraph of Respondent's Preliminary Statement, in which the NRA makes an inventive but factually unsupported allegation about AMc's business relationships: "*Many of these campaigns* [referring to AMc's other clients besides the NRA], *which cost clients tens of millions of dollars, were shut down because of their*

---

[3] *See* ECF 18, National Rifle Association of America v. Ackerman McQueen, Inc., et al., Case No: 3:19-cv-02074-G (N.D. Tex.) (the "***Dallas Action***").
[4] *Id.* at ECF 31.

*ineffectiveness, costliness, and Defendant's reluctance to provide specific performance data in accordance with its obligations.*"  See Dallas Action, ECF 18 at 4.  Presumably, this allegation was made in support of the NRA's claim for fraud in relation to AMc's billing practices and its development and production of the NRA's own "digital media" platform, NRATV.

4. Having no factual support for this damaging—and very public—allegation, the NRA is intruding upon the business operations of AMc's current and former clients.  The NRA seeks information from Integris relating to the AMc's billing practices and provision of digital media services, allegedly limiting responsive documents to 2015.  However, even if Integris were to comply with these invasive requests, any resulting document production would not yield relevant documents to support the NRA's allegations.

### III.   ARGUMENTS & AUTHORITIES

5. To quash a third party subpoena, one must have a "personal right or privilege in the subject matter of the subpoena or a sufficient interest in it."[5]  A personal right includes communications between the challenging party and the subpoenaed party, for example, as well as confidential business information.[6]

6. Under Federal Rule of Civil Procedure 45, a Court must quash or modify a subpoena that subjects a person to undue burden.  FED. R. CIV. P. 45(d)(3)(A)(iv).  The Court may also quash or modify a subpoena that requires disclosure of a trade secret or other confidential research, development, or commercial information.  FED. R. CIV. P. 45(d)(3)(B).

---

[5] *Bramell v. Aspen Exploration, Inc.*, No. 4:05-CV-384, 2008 U.S. Dist. LEXIS 72674, at *4 (E.D. Tex. Sep. 23, 2008).
[6] *Orchestrate HR, Inc. v. Trombetta*, 2014 U.S. Dist. LEXIS 24995, at *7 (N.D. Tex. Feb. 27, 2014) (finding standing where subpoena sought communications between defendants and subpoenaed parties, and where subpoenas would "require the non-parties to disclose trade secrets and confidential information").  That court also reasoned that disclosure of sensitive business documents "is presumptively more harmful than disclosure to a noncompetitor." *Id.* at *12.

7.  Moreover, subpoenas to a non-party do not grant the requesting party any broader right to information than allowed by the Federal Rules of Civil Procedure for discovery between the parties. Rather, "considerations of both relevance and proportionality govern the subpoenas." *Ward v. Liberty Ins. Corp.*, No. CIV-15-1390-D, 2018 U.S. Dist. LEXIS 26710, at *3 (W.D. Okla. Feb. 20, 2018) (quashing the subpoena as unduly burdensome when it required the subpoenaed party to "turn over apparently every document related to its policies and procedures … regardless of the documents' relevance to Plaintiff's claims in this suit"). Accordingly, a subpoena must be relevant to a party's claim or defense and be proportional to the needs of the case. *See* FED. R. CIV. P. 26(1). Thus, under Oklahoma federal law, a lawyer has a "duty to take reasonable steps to avoid imposing undue burden or expense upon the party subject to the subpoena." *Huntair, Inc. v. ClimateCraft, Inc.*, 254 F.R.D. 677, 679 (N.D. Okla. 2008).

8.  Rule 45 *requires* the Court to quash or modify a subpoena that (i) fails to allow a reasonable time to comply; (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden. FED. R. CIV. P. 45(d)(3)(A). The Court may also quash or modify a subpoena that requires disclosure of a trade secret or other confidential research, development, or commercial information. FED. R. CIV. P. 45(d)(3)(B).

9.  Further, "good faith in issuing a subpoena is not sufficient to avoid sanctions under Rule 45(c)(1) if a party has issued the subpoena in violation of the duty imposed by that rule," *i.e.*, by imposing an undue burden on the third party. *Huntair,* 254 F.R.D. at 679.

**A.   AMc has standing to quash the Integris subpoena.**

10. AMc has standing to quash the Integris subpoena because it has a personal right to information requested therein. The subpoena at issue facially demonstrates that personal right when it requests documents that AMc created—not just about AMc's services to Integris, but how

AMc calculated its fair market value billing and "non-public" information like direct communications between AMc and Integris, for instance. Even the NRA argues that the documents will uncover AMc's alleged knowledge and prior business practices—*i.e.*, information it personally created or possessed (has a personal right in). And because the NRA is requesting documents AMc created or received, "it should not be necessary for Plaintiff to obtain copies of the documents from the non-parties," even if it were entitled to them.[7]

**B.     The subpoena is overbroad and seeks irrelevant, highly confidential information.**

11.     The amended subpoena to Integris should be quashed for numerous independently sufficient reasons.

12.     *First*, although the NRA amended this one subpoena purporting to limit the requests to 2015, that alleged limitation is disingenuous and useless because the requests are still overbroad, they still seek irrelevant information, and they also intrude upon AMc's highly confidential information in circumvention of another court's protective order. To illustrate:

| No. | Substance of Request | Overbreadth |
|---|---|---|
| 1 | Documents and communications that *relate* to the scope of work and/or services provided to You by AMc… | Documents that "relate to" the services AMc provided includes **all** documents that in any way involve, concern, mention, refer, *relate* to the work AMc performed, including all documents from inception to cessation, which is grossly overbroad for any purpose in the litigation. |
| 2 | Documents *concerning* the Digital Media programming and content or platform that AMc provided to You… | Documents "concerning" the programming and content or platform includes **all** documents ever created for the "Digital Media." |
| 3 | Documents *concerning* forecasts, predictions, or estimates… | Documents "concerning" these topics include **all** documents that pre- and post-date such forecasts, predictions, or estimates, including the underlying work upon which those forecasts are based. |
| 4 | Documents *concerning* the actual performance or success of the Digital Media content and platform… | Documents "concerning" the performance of the entire content and platform includes **all** documents underlying the work upon which the performance/success are based. |

---

[7] *Id.* at *10-11.

| 6 | Documents that *relate to* the amount of money spent by You on the Digital Media content and platform. | Documents that "relate to" the money spent necessarily includes **all** documents underlying the money spent, *i.e.*, all the documents relating to the services performed—as opposed to documents that reflect the amount of money spent, *i.e.*, invoices already requested in Request No. 7. |

13. Despite having another bite at the apple, the NRA did not limit its requests in any meaningful way. Requesting "all" documents (regardless of phrasing) from the current date back to 2015 is no better than requesting "all" documents from the current date back to the beginning of AMc's business relationship with Integris. The fact remains that the requests are facially overbroad, which is unduly burdensome.

14. *Second*, as the NRA represented to this Court in response to the previous motion to quash, it requests these documents to demonstrate AMc's alleged fraud relating to NRATV based on other "failed" campaign that were "shut down."[8] But the NRA never once explains why it needs information from a *current* client. That Integris has been a client since 2002 means there was no failed campaign and neither the relationship nor such campaign has been shut down.

15. Moreover, the Integris account concerns the healthcare industry, whereas the NRA account was for the Second Amendment and gun-rights advocates. The two necessarily involve vastly different audiences, purposes, and messages, such that the campaign styles, viewership metrics, and goals would differ as well. Plus, the size and scope of the NRA and its platform, NRATV, is so much broader and more complex that any comparison with Integris would not lead to the discovery of any admissible evidence. The NRA has not demonstrated how Integris information as a current client would translate to the NRA's claims.

16. *Third*, the documents requested contain AMc's highly confidential information, including how AMc calculates its fair market value for services to Integris and how it develops

---

[8] *See Ackerman McQueen, Inc., et al. v. NRA, et al.*, Miscellaneous Case No. MC-20-1-HE (W.D. Okla.) ECF 6 at 6-7, 17.

campaigns for Integris.  In the related Virginia cases, the NRA *proposed* a two-tier protective order that included a highly confidential designation for AMc's competitive information.[9]  The Virginia court prohibited the NRA's lead counsel from accessing, reviewing, or using information designated highly confidential.  But in the Dallas Action (underlying this subpoena), the NRA refuses to agree to a similar two-tier order and instead requested any Texas order contain *only* a confidentiality designation.  What is more, the NRA *also* requested that the Texas court *demote* highly confidential information from Virginia to confidential information in Texas—meaning that its lead counsel could circumvent in Texas what the Virginia court put in place.  This subpoena (in addition to the many others) is served for the same end result.

17.     By issuing a subpoena to a third party, the NRA has the opportunity to obtain the very highly confidential information AMc seeks to protect directly from the third party without giving AMc the opportunity to make necessary designations.  AMc's only opportunity to designate would be *after* the NRA already has an opportunity to review and use the information.  Any potential claw-back remedy would require reliance on the NRA and its counsel complying therewith.  But the fact the NRA opposes the two-tier program in Texas and seeks to unwind that same scheme through the Texas protective order shows the risk with such reliance.  That AMc just learned through the NRA's responses to the prior motions to quash that third parties have produced documents proves this risk (and circumvention) to be real and imminent.

**C.     The subpoenas subject the recipients to undue burden.**

18.     "Whether a burdensome subpoena is reasonable must be determined according to the facts of the case, such as the party's need for the documents and the nature and importance of the litigation."  The relevance of a subpoena seeking discovery is measured by the standard

---

[9] *See* Dallas Action ECF 51 at 15.

articulated in Rule 26(b)(1), which limits the scope of discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). The subpoena must, therefore, be limited to documents that are relevant to any party's claim or defense and cannot be used to "develop new claims or defenses." *Kizer v. Starr Indem. & Liab. Co.*, 2019 U.S. Dist. LEXIS 76320, at *6 (W.D. Okla. May 6, 2019).

19. In addition to limiting discovery to relevant information, Rule 26 specifies that the discovery must be proportional to the needs of the case. FED. R. CIV. P. 26(b)(1). As set forth above, the documents requested in this subpoena have no relevance to the NRA's claims for fraud. Further, seeking "all" information—whether by express request or in real effect—from Integris is simply not proportional to the needs of the case and will impose unnecessary and unfair financial burdens upon it. That same burden will be cast upon AMc in its attempt to scramble to review, designate, and claw-back highly confidential documents, including the inevitable discovery fight to ensue. This subpoena is, therefore, impermissible and necessarily unduly burdensome.

20. Additionally, the NRA's lead lawyer is not simply a disinterested advocate for the NRA in this matter. He is the son-in-law of the late Angus McQueen, AMc's former owner and CEO, and the brother-in-law of AMc's current CEO, Revan McQueen. His animus-infused history with the McQueen family is well-known and itself insinuates his true reason for representing the NRA against his own family. Through the issuance of the subpoena, the NRA seeks unrestricted access to decades of information about AMc's confidential business practices, including budgets, billing information, staffing, operations, and client communications, which would circumvent a

protective order walling-off that lead lawyer from AMc's highly confidential information in the Virginia cases. The dubious motives behind this overbroad subpoena create the very undue burden the law prohibits.

**D.     Exceptional circumstances warrant supplementing the transfer of this matter to the Northern District of Texas with the present Motion to Quash.**

21.     According to Federal Rule of Civil Procedure 45(f), the compliance court can transfer the Motion to the issuing court based on exceptional circumstances. And in the present case, the compliance court has done exactly that by recently transferring Movants' original motion to quash to the Northern District of Texas. But, in the interim, an "amended" subpoena duces tecum was issued to one of the same original subpoena recipients, necessitating the present Motion to Quash. Movants submit that it would be a waste of resources, not to mention redundant, for Movants to originate yet another "miscellaneous" action in order to facilitate a motion to quash when the offending subpoena is not directed toward a new party, but rather is directed toward one of the recipients identified in Movants' original Motion to Quash. Movants submit that the most expeditious procedure to address the concerns set forth in the present motion is to simply supplement the order of transfer to the Northern District of Texas to include the present motion to quash.

## IV.     CONCLUSION

For the foregoing reasons, Movants respectfully request this Court grant their Motion, quash the Integris subpoena, or at the very least supplement its transfer order to the Northern District of Texas to include the present Motion to Quash, along with any other relief to which Movants are entitled.

Dated: March 3, 2020.

>Respectfully submitted,
>
>*/s/ R. Thompson Cooper*
>**R. Thompson Cooper**
>OBA No. 15746
>ROBERSON, KOLKER, COOPER & GOERES, P.C.
>16408 Muirfield Place
>Edmond, OK  73013
>405.606.3333 voice
>405.606.3334 fax
>tom@rkcglaw.com
>
>**ATTORNEYS FOR MOVANTS ACKERMAN MCQUEEN, INC., MERCURY GROUP, INC., HENRY MARTIN, JESSE GREENBERG, WILLIAM WINKLER, AND MELANIE MONTGOMERY**

## CERTIFICATE OF CONFERENCE

On February 7, 2019, counsel for AMc conferred with counsel for the NRA regarding the Motion.  Counsel for the NRA was opposed to the relief sought and was not willing to withdraw the subpoenas.

>*/s/ R. Thompson Cooper*
>**R. Thompson Cooper**

## **CERTIFICATE OF SERVICE**

      I hereby certify that on March 3, 2020, the foregoing document was filed with the clerk of court for the U.S. District Court, Western District of Oklahoma, and that notice should therefore be automatically generated to all counsel of record herein.

                                */s/ R. Thompson Cooper*
                                **R. Thompson Cooper**